57 CCPA

### Application of Donald H. NOVAK.
### Patent Appeal No. 8200.

United States Court of Customs and Patent Appeals.
Nov. 26, 1969.

Robert L. Berger, attorney of record, Cambridge, Mass., for appellant.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Lutrelle F. Parker, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, MATTHEWS, Judge, sitting by designation, and ALMOND, BALDWIN and LANE, Judges.

ALMOND, Judge.

This is an appeal from a decision of the Board of Appeals affirming the

rejection of claims 1–13, 15 and 16 of appellant's application[1] on the ground that these claims are unpatentable over the prior art under the provisions of 35 U.S.C. § 103. No claim has been allowed.

Appellant's invention relates to a space navigational instrument based on the sextant principle of measuring angles between objects by sighting the two objects simultaneously, superimposing one object image upon the other, and determining the angle between the two lines of sight. More particularly, the instant invention resides in appellant's practical application of the proposition that a position in space can be uniquely determined from three landmarks, two landmarks and one star or two stars and one landmark, and to that end appellant has provided a "trisextant," differing from the ordinary sextant in that three objects are sighted simultaneously.

The invention is best understood by referring to Fig. 8 below, showing a perspective view, partially in section, of

FIG. 8

a fully manually operated embodiment of the invention.

As seen, the trisextant employs three main parts, (1) a telescope 104, (2) a first rotatable head assembly 110, and (3) a second rotatable head assembly 112 mounted on the head assembly 110 for rotation relative thereto.

The telescope 104 is equipped with an eye piece 106 for viewing a first object and forming a reference axis 114 therewith. The first rotatable head assembly 110 is mounted for rotation about the axis 114. It includes a fixedly mounted beam splitter 130 and a rotatably mounted reflecting member or mirror 134 for receiving light rays from a second object and superimposing the object image thereof over the first object image along the axis 114. The reflecting member or mirror 134 is connected to an indexing arm 142 which is pivotally mounted on the head assembly 110. The lower end

1. Serial No. 262,920, filed March 5, 1963, for "Improvements in Trisextant."

of arm 142 is provided with an index mark 154 and a micrometer 150 to indicate an angular reading.

Like the first head assembly 110, the second head assembly 112 is also mounted for rotation about the axis 114. It includes a fixed beam splitter 188 and a rotatably mounted reflecting member or mirror 194 for receiving light rays from a third object and superimposing them over the object images from the first and second objects along the reference axis 114. The mirror 194 is also connected to an index arm 200. The arm 200 is pivotally mounted on the head 112 and has an index marker 218 and a micrometer 216 associated therewith.

Indicator 180 provides a readout of the relative rotation of the two rotatable heads 110 and 112 with respect to each other which together with the indicator 154 and 218 readouts of the orientation of the reflecting surfaces 134 and 194 enable the determination of special positions geometrically. These three readings, we are told, constitute:

(1) The angular displacement between a line of sight reference axis to a first object and a line of sight to a second object.

(2) The angular displacement between the line of sight reference axis to the first object and the line of sight to a third object.

(3) The angular displacement between the *planes* defined by the line of sight reference axis and the lines of sight to the second and third objects, respectively.

Claim 1 is illustrative:

1. A space navigation instrument for taking three angular readings simultaneously of three spaced objects forming a plane which does not contain the observer, comprising: means for viewing said first object and forming a reference axis therewith, first transposing means for receiving light from said second object and forming a second object image superimposed on a first object image along said reference axis, second image transpos-

ing means for receiving light from said third object and forming a third object image superimposed on said first and second images along said reference axis, and means coupled to said transposing means for indicating the angular displacements between said reference axis and the line of sight to said second object, between said reference axis and the line of sight to said third object and between the planes defined by each said line of sight with said reference axis.

The remaining claims are similar in recitation to claim 1, with various claims defining in more detail the nature and structure of the appartus features as well as their structural relationship. The claims were considered as a group by both the examiner and board and are not argued separately by appellant before this court, thus rendering it unnecessary for us to set them all out in detail here.

The references relied upon in the examiner's rejection under 35 U.S.C. § 103 are:

Cable    2,566,312    September  4, 1951
Johns    3,206,605    September 14, 1965

Cable discloses a navigational instrument comprising a telescope for directing an observer's line of sight, which object, and a rotatable head assembly mounted for rotation about the reference axis. The rotatable head assembly includes a fixedly mounted beam splitter and a rotatably mounted reflecting member for viewing light rays from a second object and superimposing the object image over the first object image along the reference axis. As objects of the invention are stated "the provision of means for simultaneously sighting and collimating the images of at least two selected heavenly bodies," and "the provision of celestial navigational means of the plural star collimating type, for finding the true north direction from a single collimated celestial observation of any two or more selected and visible navigational star images * * *." In addition, the apparatus contains a gravity-seeking instrument.

Johns describes a system for the location and tracking of extraplanetary objects such as orbiting satellite bodies. In one form of the system three direction-sensing means, such as telescopes, are coupled to the object for sensing the direction of three reference sources, such as ground beacons, in response to the respective signal of each source. The measurement of the three angles between the direction of each pair of reference sources defines the position of the object to be tracked. Another form uses only a pair of telescopes and ground beacons, while a third embodiment utilizes a single telescope sextant-type device wherein a semitransparent mirror is pivoted about an axis perpendicular to a telescope and is rotatable about the telescope axis to superimpose an off-axis object in the telescope. With respect to the embodiment, the patentee states:

Here a single apparatus provides direction-sensing means for both beacons. This concept can of course be further enhanced with a third reflecting surface transparent-reflecting device which is oriented with respect to a third beacon.

The examiner found the claim unpatentable over Cable in view of Johns, reasoning that:

Since Johns discloses that sighting three objects or beacons will uniquely determine one's position in three dimensional space and in another embodiment that two semitransparent reflectors rotatable about a telescope axis and pivotable about an axis perpendicular to the telescope axis can similarly be employed, it would be obvious to one of ordinary skill in the art to provide a duplicate secondary star sighting head in the Cable instrument. Such a modification of Cable will allow the instrument to be employed to determine any point in space as taught by Johns.

The examiner felt that appellant's contention that Johns did not measure the three angles of interest to appellant was unfounded with respect to the single telescope embodiment, but that neverthe-less someone skilled in the art related to angle measurement would have a knowledge of trigonometry and would be able to derive the necessary angular information.

In affirming, the board expressed agreement with the examiner and called attention to the two passages found in Cable and quoted hereinbefore in the discussion of that reference.

Appellant's position is simply that the references taken alone or together fail to teach the claimed structural configuration of his trisextant. Cable, it is urged, not being concerned with space navigation discloses no appreciation of measurements required in connection therewith. Moreover, the quoted portions of Cable relied upon appear only in the list of intended objects with the remainder of the specification devoid of any teaching as to how these desired goals are attained. Appellant argues that therefore these statements are meaningless and Cable's disclosure shows merely an instrument for viewing two objects.

With respect to Johns, appellant contends that, in addition to the lack of structural similarity between the instruments of Johns and appellant, the patentee teaches the determination of point position in space by measuring three angles differing from those three angles measured by appellant's trisextant. Appellant argues that Johns' description of his embodiment employing the single telescope sextant-type device is ambiguous when it refers to a "third reflecting surface transparent-reflecting device" since no mention of a second such device appears. While admitting some degree of similarity between this instrument and appellant's in that both utilize readings provided by a common sextant, any further inferences are argued to be unfounded and based on hindsight reasoning.

Appellant's arguments leave us unconvinced of error in the board's decision. We are in agreement with the Patent Office's position that the claimed trisextant finds substantially full response

in Cable except that the reference fails to show the second image transposing means and its associated angular displacement indicating means. However, we feel that the teaching of Johns, that sighting three objects will uniquely determine one's position in space and that such three sightings may be accomplished utilizing a single telescope sextant-type device having semitransparent mirrors pivoted about an axis perpendicular to a telescope, suggest to one of ordinary skill in the art the provision of a secondary sighting head in Cable. That such would be obvious can be further seen by the suggestion found in the following language of Cable:

\* \* \* means of simultaneously sighting and collimating the images of *at least two* selected heavenly bodies \* \* \*.

\* \* \* \* \* \*

\* \* \* a single collimated celestial observation of any *two or more* selected \* \* \* star images \* \* \*. [Emphasis added.]

indicating at least the amenability of the Cable instrument to reception of a secondary sighting head.

Accordingly, the decision of the board is affirmed.

Affirmed.